

FILED
05 DEC 15 AM 9:17
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Brendan Cummings (CA Bar No. 193952)
Kassia Siegel (CA Bar No. 209497)
Center for Biological Diversity
P.O. Box 549
Joshua Tree, CA 92252
Phone: (760) 366-2232; Facsimile: (760) 366-2669
Email: bcummings@biologicaldiversity.org and ksiegel@biologicaldiversity.org

Adam F. Keats (CA Bar No. 191157)
Center for Biological Diversity
1095 Market St., Suite 511
San Francisco, CA 94103
Phone: (415) 436-9682; Facsimile: (415) 436-9683
Email: akeats@biologicaldiversity.org

E-Filing

Attorneys for Plaintiffs Center for Biological Diversity and Greenpeace, Inc.

Andrew E. Wetzler (CA Bar No. 202299)
Natural Resources Defense Council
544 White Oak Place
Worthington, OH 43085
Phone: (614) 840-0891; Facsimile (415) 875-6161
Email: awetzler@nrdc.org

Attorney for Plaintiff Natural Resources Defense Council

[Additional Counsel on following page]

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation, NATURAL RESOURCES DEFENSE COUNCIL, a non-profit corporation, and GREENPEACE, INC., a non-profit corporation;<br><br>Plaintiffs,<br><br>v.<br><br>GALE NORTON, United States Secretary of the Interior and UNITED STATES FISH AND WILDLIFE SERVICE;<br><br>Defendants. | CASE NO.: C 05 5191 EMC<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

Additional Counsel for Plaintiff Natural Resources Defense Council:

Katherine S. Poole (CA Bar No. 195010)
Natural Resources Defense Council
111 Sutter St., 20th floor
San Francisco, CA 94104
Phone: (415) 875-6100; Facsimile: (415) 875-6161
Email: kpoole@nrdc.org

## I. INTRODUCTION

1. In this civil action for declaratory and injunctive relief, Plaintiffs CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, AND GREENPEACE, INC. challenge the failure of Defendants GALE NORTON, United States Secretary of the Interior and the UNITED STATES FISH AND WILDLIFE SERVICE (collectively "the Secretary") to comply with the non-discretionary listing provisions of the Endangered Species Act, as amended, 16 U.S.C. §§ 1531-1544 ("ESA"). The Secretary has failed to take any action on Plaintiffs' petition to list the polar bear (*Ursus maritimus*) as a threatened species under the ESA. 16 U.S.C. § 1533(b)(3)(A) and (B). Plaintiffs request this Court to order the Secretary to comply by a date certain with the ESA's mandatory, non-discretionary "90-day finding deadline" for processing citizen petitions to list species. Id. Compliance with this mandatory deadline is necessary to ensure the continued survival of polar bears in the wild.

2. The polar bear is the apical predator of the arctic and is the largest of the four currently recognized species of bear in the genus *Ursus*. Polar bears live only in areas of the Arctic where there is sea ice for a substantial portion of the year and are completely dependent upon sea ice habitat for their survival. Indeed, the polar bear's dependence on sea ice is so complete that, like whales and seals, they are classified as a marine mammal by scientists and the federal government. Polar bears utilize arctic sea ice for all of their essential behaviors, including mating, traveling, and hunting and feeding upon ringed seals, their primary prey. Some polar bears even give birth to their cubs in snow dens on top of the drifting sea ice. Yet the arctic sea ice habitat that the polar bear depends on is fast disappearing, threatening polar bears with extinction.

3. The disappearance of arctic sea ice is caused by global warming, which has resulted in an increase in average winter temperatures in the Artic. Average winter temperatures in some areas of the Arctic have already risen by 7° Fahrenheit. Global warming is, in turn, caused by society's emissions of greenhouse gases. Even using moderate projections of future greenhouse gas emissions levels, average winter temperatures are projected to rise by 18° Fahrenheit over the Arctic oceans by the end of this century.

4. Polar bears are threatened by other factors as well, including but not limited to high

levels of organochloride and other pollution in the Arctic, proliferating oil and gas development in their habitat, and overhunting in some areas in Russia, Canada, and Greenland.

5. On this basis, Plaintiffs submitted the 154-page Petition to List the Polar Bear (*Ursus maritimus*) as a Threatened Species under the Endangered Species Act ("Petition") to the Secretary pursuant to Section 4 of the ESA. The Secretary received the Petition on February 17, 2005. Within 90 days of receipt of the Petition, the ESA required the Secretary to determine, to the maximum extent practicable, whether the Petition presented substantial information indicating that listing "may be warranted," and if so, to initiate a status review of the species. 15 U.S.C. § 1533(b)(3)(A). If the Secretary makes a positive 90-day finding, the ESA requires her to determine, within twelve months of the Petition being filed, whether the requested action (here, listing the polar bear) is "warranted" and, if so, to publish a proposed rule listing the polar bear. 15 U.S.C. § 1533(b)(3)(B).

6. The Secretary has abrogated her mandatory statutory duty under the ESA to issue a 90-day finding on the Petition. The Secretary has now been in possession of the Petition for *ten months* and has not issued the 90-day Finding, making compliance with the 12-month finding impossible as well. Polar bears will not receive the protections they desperately need and deserve under the ESA until the Secretary makes all of the required findings and completes the listing process.

7. Because the Secretary has had the Petition for nearly one year and has still failed to act, Plaintiffs now seek judicial relief declaring that the Secretary has violated the ESA and the Administrative Procedures Act ("APA"), 5 U.S.C. § 706 *et seq.*, by failing to process the Petition and issue the required 90-day finding. Plaintiffs also ask the Court to order the Secretary to make the required finding on the Petition by a date certain.

## II. JURISDICTION, VENUE, and INTRADISTRICT ASSIGMENT

8. The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) & (g) (action arising under the ESA and citizen suit provision), 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (APA), and 28 U.S.C. § 1361 (Mandamus). The relief sought is authorized by 28 U.S.C. §§ 2201 (declaratory judgment) and 28 U.S.C. § 2202 (injunctive relief).

9. Venue is proper in the Northern District of California pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) as this civil action is brought against an agency of the United

States and officers and employees of the United States acting in their official capacities and under the color of legal authority, as at least one Plaintiff is incorporated in this judicial district, all plaintiffs maintain offices in this judicial district, and as no real property is involved in this action.

10. Pursuant to Local Rules 3-5(a) and 3-2(c) and (d), assignment of this case to the San Francisco or Oakland Division is appropriate because Plaintiffs reside in San Francisco County.

11. By written notice sent by Federal Express overnight delivery on October 11, 2005 and received by the Secretary and the Director of the U.S. Fish and Wildlife Service on October 12, 2005, Plaintiffs informed the Secretary of her violations more than sixty days prior to the filing of this Complaint, as required by the ESA. 16 U.S.C. § 1540(g). Despite receipt of Plaintiffs' notice letter, the Secretary has failed to remedy her violations of the ESA.

12. An actual, justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201. Upon information and belief, Defendants claim that, their failure to issue a 90-day finding in response to the Petition complies with all applicable laws and regulations.

13. Plaintiffs have no adequate remedy at law. The Secretary's continuing failure to respond to the Petition will result in irreparable harm to the polar bear, to Plaintiffs and Plaintiffs' members and constituents, and to the public. No monetary damages or other legal remedy can adequately compensate Plaintiffs, their members and constituents, or the public, for this harm.

14. Plaintiffs and their members and constituents are adversely affected or aggrieved by federal agency action and are entitled to judicial review of such action within the meaning of the ESA and the APA. The Secretary's failure to respond to the Petition prevents the completion of the listing process and therefore the implementation of measures to protect polar bears pursuant to the ESA. Without the substantial protections of the ESA, polar bears are more likely to continue to decline and become extinct. Plaintiffs are therefore injured because their use and enjoyment of polar bears described below is threatened by the decline and likely extinction of the bears. The Secretary's failure to respond to the Petition has also resulted in informational and procedural injury to Plaintiffs, because Plaintiffs have been deprived of a timely opportunity to submit additional information and otherwise participate in the listing process in order to secure protective measures for the species. These are

actual, concrete injuries to Plaintiffs, caused by the Secretary's failure to comply with the ESA, the APA, and their implementing regulations. The relief requested will fully redress those injuries.

15. The federal government has waived sovereign immunity in this action pursuant to 16 U.S.C. § 1540(g) and 5 U.S.C. § 702.

**III. PARTIES**

16. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a non-profit 501(c)(3) corporation with offices in San Francisco, Joshua Tree, and San Diego, California; Phoenix and Tucson, Arizona; Pinos Altos, New Mexico; Portland, Oregon; and Washington, D.C. The Center is actively involved in species and habitat protection issues throughout the western United States, including protection of Arctic wildlife in general and the polar bear in particular. The Center has over 15,000 members throughout the United States and the world.

17. Plaintiff GREENPEACE, INC. ("Greenpeace") is a California non-profit corporation with offices in San Francisco, Anchorage and Sitka, Alaska, and Washington, D.C. Greenpeace is a non-violent environmental organization. Its mission is to raise public awareness of environmental problems and promote changes that are essential to a green and peaceful future. There are approximately 250,000 current Greenpeace members in the United States. Since the 1980's Greenpeace has been a lead advocacy organization working to raise awareness of global warming and the protection of wildlife, and to advocate for serious cuts in greenhouse gas emissions through local, national and global action. For the past decade, Greenpeace has campaigned on the causes and impacts of climate change in the Arctic, including the impacts on polar bears and other species who are threatened by continued Arctic warming.

18. Plaintiff NATURAL RESOURCES DEFENSE COUNCIL, Inc. ("NRDC") is a national environmental advocacy group. The NRDC is registered to do business in California and maintains offices in San Francisco, Los Angeles, Washington, D.C., and New York City. Through advocacy, education, litigation, and other efforts, NRDC works to preserve threatened and endangered wildlife across the United States and around the world, including Arctic wildlife in general and the polar bear in particular. The NRDC has over 550,000 members nationwide, over 100,000 of whom reside in the State of California.

19. Plaintiffs' members and staff include individuals with varying interests in polar bears and their habitat ranging from scientific, professional, and educational to recreational, aesthetic, moral, and spiritual interests. Further, Plaintiffs members and staff enjoy, on an on-going basis, the biological, scientific, research, education, conservation, recreational and aesthetic values of the Arctic region inhabited by this species. Plaintiffs' staff and members observe and study polar bears and their habitat, and derive professional, scientific, educational, recreational, aesthetic, inspirational, and other benefits from these activities and have an interest in preserving the possibility of such activities in the future. An integral aspect of the Plaintiffs' members' use and enjoyment of polar bears is the expectation and knowledge that the species is in its native habitat. For this reason, the Center's use and enjoyment of polar bears is entirely dependent on the continued existence of healthy, sustainable populations in the wild. Plaintiffs bring this action on their own behalf and on behalf of their adversely affected members and staff.

20. Defendant GALE NORTON, United States Secretary of the Interior, is the highest ranking official within the Department of Interior and, in that capacity, has ultimate responsibility for the administration and implementation of the ESA with regard to the polar bear, and for compliance with all other federal laws applicable to the Department of the Interior. She is sued in her official capacity.

21. Defendant UNITED STATES FISH & WILDLIFE SERVICE ("the Service") is a federal agency within the Department of Interior authorized and required by law to protect and manage the fish, wildlife and native plant resources of the United States, including enforcing the ESA. The Service has been delegated authority by the Secretary of Interior to implement the ESA for the polar bear, including responsibility for making decisions and promulgating regulations, including proposed and final listing and critical habitat decisions and the processing of petitions for such listings. The Service has failed to publish a 90-day finding on the Petition to list the polar bear under the ESA.

## IV. LEGAL BACKGROUND

22. The ESA is a federal statute enacted to conserve endangered and threatened species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). The ESA "is the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley

Authority v. Hill, 437 U.S. 153, 180 (1978). The Supreme Court's review of the ESA's "language, history, and structure" convinced the Court "beyond a doubt" that "Congress intended endangered species to be afforded the highest of priorities." Id. at 174. As the Court found, "the plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." Id. at 184.

23. The ESA protects species listed as either "endangered" or "threatened" by the Secretary. A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" if it is "likely to become an endangered species within the foreseeable future." 16 U.S.C. § 1532(20)

24. Once a species is listed, an array of statutory protections applies. For example, Section 7 requires all federal agencies to "insure" that their actions neither "jeopardize the continued existence" of any listed species nor "result in the destruction or adverse modification" of its "critical habitat." 16 U.S.C. § 1536(a)(2). Section 9 and its regulations further prohibit, among other things, "any person" from intentionally "taking" listed species or "incidentally" taking listed species without a permit from the Service. 16 U.S.C. §§ 1538(a)(1)(B), 1539. Other provisions require the FWS to designate "critical habitat" for listed species, 16 U.S.C. § 1533(a)(3), require the FWS to "develop and implement" recovery plans for listed species, 16 U.S.C. § 1533(f), authorize the FWS to acquire land for the protection of listed species, 16 U.S.C. § 1534, and make federal funds available to states to assist in their efforts to preserve and protect threatened and endangered species, 16 U.S.C. § 1535(d).

25. However, none of these protections come into force until a species is officially listed as threatened or endangered under the ESA.

26. In order to ensure the timely protection of species, Congress set forth the listing process described below. The process includes mandatory, non-discretionary deadlines for the three required findings that the Secretary must meet, so that species in need of protection do not languish in administrative purgatory. The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination.

27. Any interested person can begin the listing process by filing a petition to list a species with the Secretary. 16 U.S.C. § 1533 (b)(3)(A); 50 C.F.R. § 424.14(a).

28. Upon receipt of a petition to list a species, the Secretary has 90 days "to the maximum extent practicable," to make a finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C § 1533 (b)(3)(A); 50 C.F.R. § 424.14 (b)(1). If the Secretary finds that the petition presents substantial information indicating that the listing may be warranted, the Secretary then publishes in the Federal Register a "90 day finding and commencement of status review." 16 U.S.C. § 1533(b)(3)(A).

29. Upon issuing a positive 90-day finding, the Secretary must then conduct a full review of the status of the species. 50 C.F.R. 424.14. Upon completion of this status review, and within 12 months from the date that she received the petition, the Secretary must make one of three findings: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted but presently precluded by other pending proposals for listing species, provided certain circumstances are present. 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14 (b)(3). This second determination is known as a "12-month finding." This deadline is mandatory. There is no mechanism by which the Secretary can extend the deadline for the finding.

30. Although in almost all cases, Congress intended the Secretary to issue 90-day findings within ninety days of receiving a petition to list a species, the language "to the maximum extent practicable" provides the Service with some limited flexibility. However, because the deadline for the 12-month finding is firm, the 90-day finding must be issued in sufficient time that the Secretary can still comply with the 12-month finding deadline. See Biodiversity Legal Foundation v. Badgley, 309 F.3d 1166, 1176 (9th Cir. 2002) (holding that both 90-day finding and 12-month finding must be made within one year of receipt of listing petition.)

31. If the Secretary finds in the 12-month finding that the listing of the species is warranted, then she must publish in the Federal Register a proposed rule, for public comment, to list such species as endangered or threatened. 16 U.S.C. § 1533(b)(5).

32. Within one year of the publication of a proposed rule to list a species, the ESA requires the Secretary to render a final determination on the proposal. 16 U.S.C. § 1533(b)(6)(A).

33. At such time, the Secretary must either list the species, withdraw the proposal, or if there is substantial disagreement about scientific data, delay a final determination for up to six months to

solicit more scientific information. 16 U.S.C. §§ 1533(b)(6)(A)(i)(III) & 1533(b)(6)(B)(i).

34. Concurrently with a final determination to list a species, the Secretary must render a final decision concerning the designation of critical habitat for the species to the maximum extent prudent and determinable. 16 U.S.C. §§ 1533(a)(3) & 1533(b)(6)(C). If the Secretary finds that designation of critical habitat is prudent, but is not currently determinable, then the Secretary may extend the deadline to issue a final regulation concerning critical habitat by no more than one additional year. 16 U.S.C. § 1533(b)(6)(C)(ii).

35. It is critical that the Secretary scrupulously follow the ESA's listing procedures and deadlines if species are to be protected in a timely manner, because the ESA does not protect a species until the species is formally listed as threatened or endangered.

**V. FACTUAL BACKGROUND**

36. Plaintiffs' Petition to list the polar bear as a threatened species was submitted on February 16, 2005 and received by the Secretary on February 17, 2005. As summarized very briefly below, the 154-page Petition details the factors that threaten polar bears with extinction within the foreseeable future.

37. There are twenty polar bear populations distributed throughout the Arctic. These populations can be found within the jurisdiction of 5 countries: the United States (in Alaska), Canada, Denmark (in Greenland), Norway, and Russia. Worldwide polar bear abundance was most recently estimated in 2002 at 21,500-25,000 bears.

38. Polar bears are marine mammals and are completely dependent upon Arctic sea-ice for survival. Polar bears need sea ice as a platform from which to hunt their primary prey species the ringed seal (*Phoca hispida*), to make seasonal migrations between the sea ice where they feed and their terrestrial denning areas, and to find mates. Some polar bears even give birth to their cubs in snow dens on top of the drifting sea ice. Because polar bears hunt only when on the ice, when forced onto land either by the seasonal retreat of the sea ice in some areas or to give birth to their cubs, polar bears undergo a time of near complete fasting.

39. The earth's climate is warming due to society's production of greenhouse gases, primarily from the combustion of fossil fuels for energy. The primary greenhouse gases are carbon

dioxide, methane, and nitrous oxide. Increasing concentrations of greenhouse gases cause the earth's atmosphere to retain a greater proportion of the sun's energy, warming the earth's climate much like the interior of a greenhouse. Climate science has advanced rapidly in recent years, and it has now been firmly established that society's production of greenhouse gases is responsible for the unprecedented rate of warming over the past century.

40. For a number of reasons, the Arctic has experienced greater and more rapid warming than temperate regions. Average winter temperatures in some areas of the Arctic have already risen by 7° Fahrenheit. Even using moderate projections of future greenhouse gas emissions levels, average winter temperatures are projected to rise by 18° Fahrenheit over the Arctic oceans by the end of this century. As a result of the warming already experienced, Arctic sea ice is melting very rapidly. The total extent of summer sea ice as measured in September has been diminishing, and the sea ice edge now occurs hundreds of kilometers further from land than in the past. Summer sea ice may disappear entirely well before the end of this century.

41. Polar bears cannot survive the loss of their habitat. Canada's Western Hudson Bay population, at the southern edge of the species' range, is already suffering from pronounced reductions in sea ice. Break-up of the annual ice in Western Hudson Bay is now occurring on average 2.5 weeks earlier than it did 30 years ago. Earlier ice break-up is resulting in polar bears having less time on the ice to hunt seals. Polar bears must maximize the time they spend on the ice feeding before they come ashore, as they must live off built-up fat reserves for up to 8 months before ice conditions allow a return to hunting on the ice. As a result of the reduced hunting season scientists have observed that the polar bears in the Western Hudson Bay population are thinner, that female bears have a lower reproductive rate, and a reduction of survival among juvenile bears. The population of polar bears in Western Hudson Bay has declined approximately 14%, from 1,100 bears in 1995 to 950 bears in 2004.

42. As trends in the Western Hudson demonstrate, polar bear populations may be in danger even without the complete disappearance of sea ice. The timing of ice formation and break-up determines how long and how efficiently polar bears can hunt seals. A reduction in the hunting season caused by delayed ice formation and earlier break-up means reduced fat stores, reduced body condition, and therefore reduced survival and reproduction.

43. Reductions in sea ice will, in some areas, also result in increased distances between the ice edge and land. This will make it more difficult for female bears that den on land to reach their preferred denning areas. Bears will face the energetic trade-off of either leaving the sea ice earlier when it is closer to land or traveling further to reach denning areas. In either case, the result is reduced fat stores and likely reduced survival and reproduction.

44. Reduced sea-ice extent will also likely result in reductions in the availability of ice-dependent prey such as ringed seals, as prey numbers decrease or are concentrated on ice too far from land for polar bears to reach.

45. Global warming will likely increase the rates of human/bear interactions, as greater portions of the Arctic become more accessible to people and as polar bears are forced to spend more time on land waiting for ice formation. Increased human/bear interactions will almost certainly lead to increased polar bear mortality.

46. The International Union for the Conservation of Nature Species Survival Commission ("IUCN/SSC") Polar Bear Specialist Group ("PBSG") is the world's preeminent scientific body for the study, conservation, and management of polar bears and responsible for assigning the polar bear's status on the official "Red List" of the world's species at risk. In June, 2005, the PBSG classified the polar bear as "Vulnerable" due to the impacts of global warming. A "Vulnerable" species faces a "high risk of extinction in the wild."

47. Polar bears are threatened by other factors as well, including high levels of organochloride pollution (such as PCBs), mercury, and other toxins in the Arctic that bioconcentrate and bioaccumulate in polar bear tissue. Polar bears are threatened by the proliferation of oil and gas development in their habitat, which can disrupt denning, feeding, and other behaviors, and which also poses a risk of harmful oil spills. Despite past successes in controlling formerly widespread overhunting, polar bears are hunted at unsustainable harvest levels in some areas of Canada, Russia, and Greenland. Polar bears will be exposed to increasing human activity, such as shipping, that occurs as a result of decreasing Arctic sea ice. Many of these threats will interact with global warming in cumulative and synergistic threats ways, further heightening the threat to polar bears.

48. Section 4(b)(3) of the ESA and its implementing regulations required the Secretary to

respond to the Petition setting forth the threats to polar bears by making an initial determination within ninety days of receiving the petition "to the maximum extent practicable." 16 U.S.C § 1533 (b)(3)(A).

49. The only response Plaintiffs have received from Defendants thus far is a letter dated July 1, 2005, from the Service stating that it would "not be able to address your petition at this time" due to alleged financial constraints. The letter states that the ability to respond to the Petition would be re-evaluated as "funds become available, and at the beginning of each fiscal year," and that petitioners would be notified when funds are available to review petitions. Plaintiffs have received no further communication from Defendants.

50. Ninety days from the date that the Secretary acknowledges receiving the listing Petition was May 18, 2005. One year from the date that the Secretary received the Petition will be February 17, 2006. The Secretary's failure to issue the 90-day finding has made it impossible for the Secretary to meet the deadline for the 12-month finding, as well.

## VI. CLAIM FOR RELIEF

**(Violation of Endangered Species Act, 16 U.S.C. § 1533(b)(3), for Failure to Make a 90-day Finding on the Listing Petition)**

51. Plaintiffs reallege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

52. The Secretary's failure to make a 90-day finding on the Petition to list the polar bear as a threatened species is a violation of the ESA and its implementing regulations. 16 U.S.C. § 1533(b)(3)(A); § 1540(g). The Secretary's failure to perform her mandatory, non-discretionary duty also constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of the APA, 5 U.S.C. § 706(1). Additionally, and/or alternatively, the Secretary's failure to comply with this provision is arbitrary and capricious, an abuse of discretion, not in accordance with law, and a failure to observe proper procedure under the Administrative Procedures Act, 5 U.S.C. § 706(2).

## VII. PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully requests that the Court grant the following relief.

1. Declare that the Secretary is in violation of her non-discretionary duties under 16 U.S.C.

§ 1533(b)(3)(A) of the ESA for failing to make a 90-day finding in response to the Petition to list the polar bear under the ESA;

2. Issue permanent injunctive relief compelling the Secretary to make and publish in the Federal Register a 90-day finding on the Petition to list the polar bear under the ESA by a date certain;

3. Award Plaintiffs their costs of litigation, including reasonable attorneys fees; and

4. Grant Plaintiffs such other relief as the Court deems just and proper.

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

DATE: December 14, 2005

Respectfully Submitted,

CENTER FOR BIOLOGICAL DIVERSITY and GREENPEACE, INC.

By: Adam Keats

Adam F. Keats (CA Bar No. 191157)
Brendan Cummings (CA Bar No. 193952)
Kassia Siegel (CA Bar No. 209497)
Center for Biological Diversity

NATURAL RESOURCES DEFENSE COUNCIL

By: Andrew Wetzler (by AK)
Andrew E. Wetzler (CA Bar No. 202299)
Katherine S. Poole (CA Bar No. 195010)
Natural Resources Defense Council